ADOLPH COHEN, plaintiff in error, *vs.* MEYERS, COHEN & COMPANY *et al.*, defendants in error.

1. A bill by creditors charging that the debtor, who is insolvent, has fradulently transferred his property, a stock of dry goods, to a third person who is in complicity with the fraud, and who is rapidly selling them at retail to other persons, and praying the appointment of a Receiver, is not demurrable, on the ground that the complainants do not show that they have sued their claims to judgment at law.

2. In a motion to revoke an order appointing a Receiver, on the ground that the answer of the defendants, with the supplemental affidavits, "swears off" the equity of the bill, the Chancellor is authorized by law to grant or refuse the motion, according to his discretion, under all the facts and circumstances of the case, and this Court will not control his judgment unless his discretion has been abused.

3. If affidavits used on the hearing of an equity cause are part of the record they need not be copied in the bill of exceptions. (R. See end of report.)

Equity. Receiver. Bill of Exceptions. Before Judge CLARK. Chambers, Macon county, October, 1870.

Einstein & Eckman, and others, filed a bill containing the following averments: Barnard Golinski, of Albany, a trader, owes Einstein & Eckman, Robert Zacharias, and Meyer, Cohen & Company specified sums of money on drafts due respectively on the 19th, 1st and 18th of October, 1870. These drafts were given for goods bought by said Golinski from said respective parties. Golinski took the goods to Albany and put them into his store where he was doing business. All Golinski's goods have been, by him, removed from Albany to Montezuma and there taken possession of by Adolph Cohen, who is selling them out as his own. Golinski and Adolph Cohen made said transfer of the goods avowedly, on the part of both, to defraud these complainants and other creditors of Golinski. Golinski and Adolph Cohen are insolvent.

They prayed that the pretended sale to Cohen be set aside, and that meanwhile a Receiver take charge of said goods, with a view of securing the payment of said drafts and other de-

mands against Golinski for all creditors who may become parties complainants. The Chancellor, Judge Cole, on the 20th of October, 1870, ordered the sheriff to seize the goods and turn them over to a Receiver appointed in the order. This was done on the next day.

Cohen answered, that on the 5th of September, 1870, he bought from Golinski, certain goods at $4,745 88, and on the 13th of September, 1870, certain others at $199 00; that at each purchase he paid the amounts respectively aforesaid in cash; that these purchases were made in a due course of trade, *bona fide*, without any intention to defraud Golinski's creditors. Indeed he said he did not know that Golinski owed complainants till he saw this bill. He said that he bought of Golinski because he offered the goods as low as they could be bought in New York; that he was selling them in his own store, in due course of trade, at Montezuma, and putting the proceeds into other goods to keep up his stock; that he owed nobody anything and had done nor said anything inconsistent with *bona fides* in the premises.

Golinski answered as Cohen had, and said, further, that he sent the money received from Cohen, per express, to A. S. Joffer, his brother-in-law, at New York, per express, to pay his debts; said drafts were drawn on said Joffer, who was his security; and said money, $5,000 00, so sent, was stolen from Joffer. He denied all fraud and combination, and said he might have told Cohen he would make a sacrifice on the goods to keep up his credit, but told him no more as to his indebtedness. He admitted his insolvency, but said it was due to the loss of said $5,000 00.

Upon the filing of these answers, defendants moved, before Judge Clark, to have said Receiver discharged and said goods restored to Adolph Cohen. Jacob Cohen made affidavit that Golinski boasted to him that he had gotten ahead of his creditors by this sale to Adolph Cohen, and said that he, Golinski, was still interested in the stock; and that he had heard different parties say that Adolph Cohen had boasted

that he did not buy goods in New York because he expected to buy Golinski's goods, who would sell cheaply because he did not intend to pay his debts. (All this was denied in the said answers). On behalf of defendants, three persons, two of them clerks of Golinski's, made affidavits that said purchase was in the usual course of trade, and that Adolph Cohen paid said cash as stated in his answer. One added that he knew that Golinski had no interest in the goods after Adolph Cohen bought them.

The grounds for the motion were, that the application being *ex parte*, and no bond having been given, the Chancellor ought not to have appointed the Receiver; and now should discharge him because the equity of the bill was sworn off by the answers and affidavits.

The Chancellor required complainants to give a bond, (for what or to whom does not appear), and then refused to discharge the Receiver, until Adolph Cohen would file a bond, with good security, in the sum of $2,000 00, conditioned to pay whatever decree complainants might recover against him in this cause. This is assigned as error.

When the cause was called here, counsel for defendants in error moved to dismiss it, because the affidavits on behalf of the defendants were not copied into the bill of exceptions. The bill of exceptions said, "upon the coming in of the answers of defendants and affidavits of the other parties, a copy of which affidavits are hereto attached, marked exhibits B, C and D," the motion, etc. After the usual certificate of the Judge to the bill of exceptions, follow these three affidavits. But there is no mark of identification on either. The usual certificate of the Clerk comes after these affidavits. The affidavits for the complainants were attached to the bill, and come up as part of the certified record. But no allusion is made, in the record, to these affidavits for defendants, except this : The Judge said in his order, "after consideration of all the facts set forth in the bill, answers and affidavits" ordered, etc. The motion was overruled, because the affidavits were part of the record.

Cohen *vs.* Meyers, Cohen & Company *et al.*

Morgan & McCarthy; Lanier & Anderson, for plaintiffs in error.

Nesbits & Jackson, for defendants.

McCay, J.

It is well settled in this Court, that the judgment of the Court below, in a proceeding of this character, will not be interfered with, hastily. The Code, section 3150, expressly places these interlocutory proceedings in the discretion of the Circuit Judge, and this Court will, in its review of his actions, give great respect to his opinion upon the facts.

As a matter of course, if there be no equity in the bill, if the Court has no jurisdiction of the case, that is another matter. But it is a mistake to suppose that, if the answer, in terms, denies the charges in the bill, the Judge is required, by law, to revoke his order granted *ex parte*. He is to take the whole case, to consider the credibility of the answer, its consistency with itself, and with the nature of the case; and if, on the whole, it appear that justice requires things to remain in *statu quo* until a jury can pass upon the case, the order ought to stand.

We cannot help feeling that the Judge, in this case, is about right. The admitted facts are suspicious, and we think the answer only makes them more so. It is a little odd that such a purchase should have been made, and the loss of this money, as stated in the answer, with such ready means at hand to prove it, if true, does not, in our judgment, look exactly natural, and worthy of full belief. We can easily see how the Judge should feel that this matter ought to be passed upon by a jury, and that justice requires the property to be kept safe until the hearing.

We are not perfectly satisfied that this is a case not falling within the rule that a general creditor cannot ask the preventive aid of a Court of Equity before he gets a judgment at law. But there are facts stated and charged in the bill

which, if true, give *these* creditors a peculiar equity. It is charged that Golinski *bought* these goods, with *intent* to *defraud* the complainants, that he never *intended* to pay for them, and that Cohen *knew* of *this*, and acted upon it, with the avowed purpose of making money out of the transaction. If he was in complicity with Cohen before he bought the goods, or if Cohen knew, when *he* bought, that Golinski had this intent, this case would be entirely out of the rule to which we have referred. Then these goods never, in equity, belonged to Golinski; he *obtained* them by fraud, and with a fraudulent intent, and the jurisdiction of a Court of Equity is complete.

We think there is enough charged in this bill to justify this, and that the whole case ought to go on for a hearing on its merits.

Judgment affirmed.